

Littler
Employment & Labor Law Solutions Worldwide
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/13/13

Littler Mendelson, PC
900 Third Avenue
New York, NY 10022.3298

A. Michael Weber
212.583.2660 direct
212.583.9600 main
212.832.2719 fax
mweber@littler.com

June 11, 2013

**VIA E-MAIL**

The Honorable Cathy Seibel
United States District Judge
United States District Court for the Southern District of New York
300 Quarropas St.
White Plains, New York 10601-4150

**Re: *Kudo, et al. v. Panda Restaurant Group, et al.*, Case No. 09-CV-0712-CS-GAY (S.D.N.Y.)**

Dear Judge Seibel:

We represent Defendants Panda Restaurant Group, Inc. and Panda Express, Inc., ("Defendants") in the above-referenced matter. We write in response to Plaintiffs' letter to the Court dated June 7, 2013 ("Pls. Letter"), opposing Defendants' request for leave to amend the answer. Plaintiffs' objections provide no legal basis for denying Defendants' request to add the executive and administrative exemptions as affirmative defenses. Plaintiffs' arguments are unavailing, and the Court should not credit their claims.

First, Plaintiffs argue that prior defense counsel "clearly and unequivocally intentionally relinquished these defenses." (Pls. Letter at 1-2.) In other words, Plaintiffs claim that they were relying on the fact that Defendants would not claim *any* exemption at all. Given that this is a store manager misclassification case, Plaintiffs' position is without merit. As the Second Circuit has explained, an "exemption ... may technically be termed an 'affirmative defense.' ... [but] in reality, [the defense] is the 'mirror image' of plaintiffs' claim – plaintiffs claim they were legally entitled to overtime, and [defendant] counters that they were not.'" *Myers v. Hertz Corp.*, 624, F.3d 537, 551 (2d Cir. 2010). If Plaintiffs were truly relying on some kind of strategic omission by prior defense counsel, then surely they would have moved for judgment on the pleadings pursuant to FRCP Rule 12(c) by now. Instead, the Parties are about to begin depositions on the merits of unpaid overtime claims asserted by 35 opt-ins who were allegedly misclassified as exempt store managers. (*See* June 10, 2013 Scheduling Order, Dkt. 274) (referencing the Parties' proposed deposition schedule). Accordingly, Plaintiffs cannot credibly claim that their strategy was to rely on the fact that Defendants intentionally chose not to assert *any* exemption at all.

Second, Plaintiffs have been on notice of the executive and administrative exemptions since the inception of the litigation. In fact, during the Parties' initial conference on April 3, 2009, Plaintiffs' counsel stated that "it is [the named] plaintiff's position that *his duties were not*

*primarily managing* but instead that he performed the same manual tasks primarily [performed by] the hourly workers."[1] (Tr. from Apr. 3, 2009 Court Conf. at 2:8-11, attached hereto as Exhibit A.) (Emphasis added.) As the Court pointed out during that same conference, Plaintiffs' theory is "that the managing, hiring, and firing was [actually] done by a corporate office," and not the managers of each store. (Exhibit A at 3:8-9; *see also* Tr. from Sept. 11, 2009 Court Conf. at 2:9-14, attached hereto as Exhibit B) (explaining that this action "involve[s] the managers of [Defendants'] restaurants and . . . whether they are like hourly workers or like management.") Most significantly, at this same initial conference, Defendant's counsel specifically referenced the fact that "there is a Fair Labor Standards Act reg[ulation] that even addresses people in the restaurant industry. If they are the ones that call the shots, then they are exempt." (Exhibit A, at 4:9-13.) Apparently recognizing that Defendant's counsel was referring to the "concurrent duties" regulation contained in the FLSA regulations at "Subpart B – Executive Employees," 29 C.F.R. § 541.106, the Court then noted that the regulation provides that "[i]f they happen to serve customers in their down time, that doesn't make them [non-exempt]." (*Id.* at 4:14-15); *see also* 29 C.F.R. § 541.106(b) ("For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such non-exempt work does not preclude the exemption if the assistant manager's primary duty is management. An Assistant manager can supervise employees and serve customers at the same time without losing the exemption.") These statements were made at the beginning of the litigation by counsel for both Parties, as well as the Court, and gave clear notice to Plaintiffs that Defendant would be relying on these exemptions.

Moreover, Plaintiffs cannot claim that they were laboring under the assumption that General Managers were misclassified pursuant to the outside sales or professional exemptions — especially since Defendants have asserted elements common to both the executive and administrative exemptions in their written discovery responses and pleadings since the outset of this case. The fact that these two so-called white-collar exemptions were not specifically pleaded as affirmative defenses in the answer is most likely the result of unintentional oversight by prior defense counsel. Other district courts in this Circuit have permitted defendants to add exemptions as affirmative defenses *after* the close of discovery, as it is practically a given that an employer might assert exemptions to the FLSA *as defenses to overtime claims* — especially where, as here, additional discovery on the merits of the exemptions is unnecessary. *See, e.g., Schwind v. EW & Assocs.*, 357 F. Supp. 2d 691, 699-700 (S.D.N.Y. 2005) (construing defendants' motion for summary judgment as a motion to amend the answer to add the executive, administrative, and outside sales exemptions as affirmative defenses); *Donovan v.*

[1] Indeed, the test for employees employed in a "bona fide executive capacity" under the FLSA requires (1) that they be compensated on a salary basis of no less than $455 per week; (2) that their *primary duty is management of the enterprise* in which they are employed; (3) that they customarily and regularly direct the work of two or more other employees; and (4) that they have "the authority to hire or fire other employees or [that their] suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(1)-(4). (Emphasis added.)

*Buffalo Downtown Dump Truck Svc. & Supplies, Inc.*, 1985 U.S. Dist. LEXIS 20799, at *11 (W.D.N.Y. Apr. 12, 1985) (granting defendant's motion to amend and explaining that "surely the mere requirement to present the case upon the merits [of the motor carrier exemption] does not prejudice plaintiff.").

Ultimately, Plaintiffs' objections must fail because they have failed to articulate any prejudice that would warrant denial of Defendants' proposed amendments under FRCP Rule 15(a). Indeed, the only prejudice identified by Plaintiffs is the cost of having to re-review the documents produced prior to their Motion for Conditional Certification. (Pls. Letter at 2.) These documents consisted mostly of e-mails pertaining to Named Plaintiff Khan Kudo and the original five (5) opt-ins. (Pls. Letter at 3.) However, it is well-settled that an "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *U.S. ex rel. Maritime Admin. v. Continental Illinois Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989); *see also Donovan*, 1985 U.S. Dist. LEXIS 20799, at *6 (explaining that "plaintiff's contention that it would incur additional expenses by the late assertion of the [motor carrier exemption] defense is not tenable" in granting leave to amend the answer).

As explained in Defendants' Premotion Letter dated May 14, 2013, and also above, at the time Plaintiffs were reviewing these documents, they still had ample notice that the executive and/or administrative exemptions might be defenses to Plaintiffs' claims. Indeed, regardless what Plaintiffs' counsel may have thought initially or contends today, the Court's Decision and Order dated June 3, 2011 granting Plaintiffs' Motion for Conditional Certification should have cleared up any ambiguity concerning which exemptions were at issue in this action, since the Court noted that "the relevant exemption, for the purposes of this case, is for employees 'employed in a bona fide *executive, administrative*, or professional capacity.'" (Dkt. No. 59 at 4.) (Emphasis added.) Plaintiffs notably do not address this point in their Letter, as it establishes that, since Plaintiffs have been on notice for over two years (at a minimum) as to the relevant exemptions in this action, they have had more than sufficient time to review any documents previously produced. Accordingly, there can be "little legitimate surprise" on Plaintiffs' part now, and such a contention lacks credibility. *Maritime Admin.*, 889 F.2d at 1254-55 (reversing lower court's denial of party's request to amend answer for abuse of discretion). While Plaintiffs inexplicably failed to review these documents with an eye towards the merits of their claims previously, Defendants are nevertheless open to discussing a reasonable solution for re-producing these documents now, in the interest of moving the case along.

For the reasons explained above, Plaintiffs' arguments should be rejected and Defendants should be permitted to amend the answer. Plaintiffs will hardly be prejudiced if the pleadings conform to the "mirror-image" defenses that have been at issue in this case all along and that the Court made clear are central to the case when it issued its June 3, 2011 Decision.

Respectfully submitted,

A. Michael Weber

AMW/nk

cc: Mary Marzolla, Esq. (via e-mail)
Sara Kane, Esq. (via e-mail)
Rob Valli, Esq. (via e-mail)
Aneeba Rehman, Esq. (via e-mail)

# EXHIBIT A

1

943ikudc ag CONFERENCE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

KHAN KUDO, et al.,

Plaintiffs,

v. 09 Civ. 712 CS

PANDA RESTAURANT GROUP, INC.,

Defendant.

------------------------------x

White Plains, N.Y.
April 3, 2009
11:30 a.m.

Before:

HON. CATHY SEIBEL,

District Judge

APPEARANCES

FEERICK LYNCH
Attorney for Plaintiffs
MARY ELIZABETH BRADY MARZOLLA

OGLETREE, DEAKINGS, NASH, SMOAK & STEWART
Attorney for Defendant
SHARON PATRICIA MARGELLO

CONFERENCE

SOUTHERN DISTRICT REPORTERS, P.C. (212) 805-0300

THE CLERK: Kudo v. Panda Restaurant Group.

THE COURT: Good morning. Fair Labor Standards Act case?

MS MARZOLLA: Yes, your Honor.

THE COURT: Your client was the manager but you're alleging that he didn't really manage and was basically a hourly worker who didn't get overtime.

MS MARZOLLA: That's correct, your Honor. It's plaintiff's position that his duties were not primarily managing but instead that he performed the same manual tasks primarily as the hourly workers, that he regularly worked over 40 hours per week, but was deprived the overtime pay for performing the same exact tasks that the hourly workers performed, simply by reason of the fact that he was misclassified and called a manager.

I had discussed this case with defense counsel pursuant to your Honor's rules before this time, trying to come up with a discovery order to comply with your Honor's rules. But given the nature of the action, we just don't think that we can complete discovery within six months.

THE COURT: This is a potential class action?

MS MARZOLLA: Yes, your Honor.

THE COURT: What's your class, anyone who is a manager?

MS MARZOLLA: General manager. Each store, there's

1100 stores approximately across the Continental United States, each one has a general manager subject to the same, we believe, policies and procedures that Mr. Kudo was. In fact, we've been contacted by various managers throughout the country including the States of Texas, Florida, Iowa, upstate New York, downstate New York, New Jersey, Ohio and North Carolina, all telling us the same story that Mr. Kudo has told us.

THE COURT: The argument would be that the managing, hiring, and firing was done by a corporate office.

MS MARZOLLA: Corporate policies, and run by district managers who know the day-to-day operations of the restaurants.

THE COURT: What's the best way to proceed here? Do you want to do, are you going to need some discovery before you're in a position to move for class certification?

MS MARZOLLA: That's correct, your Honor.

THE COURT: What usually comes first?

MS MARZOLLA: In speaking with defense counsel, normally these cases come in two stages. We believe that we need some time to perform preliminary discovery, document exchanges and perhaps some depositions with regard to the issue of the conditional certification, at which time we'd be able to make our motion for conditional certification. And of course, the plaintiffs want to do that sooner rather than later, because every day that someone doesn't opt in there are issues of tolling. I know in the Francis case you did cite to some

defendant depositions in agreeing with Judge Yanthis' order, and I don't want to make the mistake of not having enough proof for your Honor on our motion.

THE COURT: It seems to me that should be the first step and then either the class will be certified or it won't and then the rest of the discovery can proceed or you can try to resolve it.

Ms Margello?

MS MARGELLO: I would agree with that process, your Honor. Obviously, we say they ran the show, they're the person that's in charge, and there's a Fair Labor Standards Act reg that even addresses people in the restaurant industry. If they're the ones that call the shots then they are exempt.

THE COURT: If they happen to serve customers in their down time, that doesn't make them --

MS MARGELLO: That's correct, your Honor.

THE COURT: It will be a factual question I guess on what we have here. So what do you think you want to do time-wise in terms of the first stage of discovery?

MS MARZOLLA: Your Honor, in speaking with defense counsel, we do need some time on that. Ideally, I believe that under the circumstances, we have about 30 days to serve our document demands, 0 days to respond, some time to conduct depositions, get the transcripts and get supplemental demands. I think we're into September and October at that point.

THE COURT: Does that sound right, Ms Margello?

MS MARGELLO: That sounds right. We probably could do it a little shorter, your Honor, but we do need time to do the initial discovery on the class certification issue.

THE COURT: Why don't we do this. Why don't we come back in September, I'll ask Ms. Cama to look for a date early in September.

THE COURTROOM DEPUTY: Friday, September 11th at 9:30.

THE COURT: And by then the preliminary discovery should be completed and we'll set a schedule for the motion.

MS MARGELLO: Thank you, your Honor.

MS MARZOLLA: Thank you, your Honor.

THE COURT: Anything else we need to do this morning?

MS MARGELLO: No, thank you, your Honor. I'd like to submit later today to the Court a motion for admission pro hac vice.

THE COURT: No problem. Just make sure the clerk's office downstairs relieves you of the 25 dollars.

MS MARGELLO: Thank you, your Honor.

(Proceedings adjourned)

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

KHAN KUDO, Indivdually and on behalf of all other persons similarly situated,

Plaintiff,

-against-

09 Civ 712

PANDA RESTAURANT GROUP, INC. and PANDA EXPRESS, INC.,

Defendants.

-----------------------------------x

United States Courthouse
White Plains, New York

September 11, 2009

B e f o r e:

HON. CATHY SEIBEL,
District Court Judge

A P P E A R A N C E S:

CHRISTOPHER WALSH
Attorney for Plaintiff

SHARON P. MARGELLO
DOMINICK C. CAPOZZOLA
Attorney for Defendants

ANGELA A. O'DONNELL, RPR
Official Court Reporter

PROCEEDINGS

THE COURT: Mr. Walsh.

MR. WALSH: Good morning, your Honor.

THE COURT: Good morning, Ms. "MARGELLO" or "MARJELLO"?

MS. MARGELLO: "MARJELLO."

Good morning, Ms. Margello and Mr. Capozzola.

MR. CAPOZZOLA: Good morning, your Honor.

THE COURT: This involved the managers of the restaurants and whether they are hourly workers or whether they are like hourly workers or like management; am I correct?

MS. MARGELLO: Yes, your Honor.

MR. WALSH: Yes.

THE COURT: All right. And we talked last time about doing discovery on class certification and talking today about a motion. Has that discovery all been done?

MR. WALSH: We're in the midst of paper discovery. We have not yet had depositions. We were speaking this morning with an eye toward asking the Court for an additional three months to complete depositions and then return for a motion schedule.

THE COURT: Well, that's what we talked about doing in April. What's been going on since April? Why hasn't anything happened?

MR. WALSH: Oh, no, a great deal has been happening. The volume --

THE COURT: Why haven't any depositions happened?

MR. WALSH: The volume of discovery is enormous. Defendants recently provided, for example, your Honor, electronic discovery of about 15,000 emails. We're still waiting for additional emails we understand will be in the range of about 150,000.

MR. CAPOZZOLA: 150,000 pages, your Honor.

THE COURT: Well, I believe it's voluminous, but you asked me in April for five months, I gave you five months. I mean, if they just produced it, what happened in April, May, June, July and August?

MR. WALSH: Collecting the work. Collecting the paperwork.

THE COURT: This seems to me -- I mean, you're being very mellow, Mr. Walsh, but this seems to me to be way too leisurely. Five months time and paper discovery is not even done? What's happening on the defense side? Why is that the only thing that's happened?

MS. MARGELLO: Well, your Honor, we've had a lot of discussions among counsel and actually have resolved a lot of issues that relate to discovery. Document requests were served I guess the end of April or beginning of May. We did respond to the request, we got together and talked

about what the parameters would be of the search because, as you can imagine, it's a voluminous amount of documents that we're talking about. We did notice depositions and they were adjourned. We've talked about, we just sent out a schedule again for the depositions of the opt-in plaintiffs, and we're actually optimistic that most of the issues that are outstanding we'll be able to resolve.

THE COURT: Look, I appreciate you working things out among yourselves, but one thing I have which is a real pet peeve, and I don't think any of you have been before me so you might not know, although I think Ms. Marzolla has heard me saying this before, if you're having trouble meeting the discovery deadline, I don't want to hear about it when the discovery deadline has passed. If one or the other side is being unreasonable, I want to hear about that while it's -- not immediately when you start thinking that but after a reasonable period of time has happened and it hasn't been resolved. If you don't think the other side is being unreasonable but you don't think you're going to make your cut-off, I want to hear about it in advance. And, you know, I'm usually quite reasonable, you can send me a letter, you can explain what the issues are, and I'll give you new dates; but it's a pet peeve when lawyers come in on or after the deadline and just assume they can get more time.

Give me a realistic proposal, a date by which you will have this first phase of discovery done.

MS. MARGELLO: Well, I think a realistic proposal would be by December 11. If your Honor wants us to shorten it up, we could probably shorten it up to 60 days rather than 90 days.

THE COURT: No, I'd rather make it 90 days and have it stick. So December 11th it is, but I am not going to be amenable to extending because we've got a long road ahead of us here. This is just the preliminary issue.

Ms. Cama, if we can have a date after December 11th?

THE CLERK: Friday, December 18, 9:30.

THE COURT: At that point we'll set a schedule for motions. If you folks can agree on a schedule before that date and you want to save the trip and send me a letter saying we agreed on the following motion schedule, therefore, we don't need the conference, you can do that. But that letter should also -- it should also inform me that discovery is completed.

All right. Anything else we need to do this morning?

MS. MARGELLO: No, your Honor. Thank you very much.

MR. CAPOZZOLA: No.

THE COURT: All right. Thank you.

MR. WALSH: Thank you, your Honor.

(Proceedings concluded at 10:01 a.m.)

C E R T I F I C A T E

I, Angela A. O'Donnell, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

______________________________

Angela A. O'Donnell, RPR, Official Court Reporter
United States District Court, Southern District of New York