UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KHAN KUDO, Individually and on Behalf of All Other
Persons Similarly Situated,

                                Plaintiffs,

               -against-

PANDA RESTAURANT GROUP, INC., and
PANDA EXPRESS, INC.,

                          Defendants.

-------------------------------------------------------------------X

**Civ. No.09-cv 0712(CS)**

**ECF CASE**


<u>MEMORANDUM OF LAW IN SUPPORT OF</u>
<u>MOTION FOR APPROVAL OF SETTLEMENT PURSUANT TO THE</u>
<u>FAIR LABOR STANDARDS ACT "FLSA", APPROVAL OF AWARDS AND</u>
<u>APPROVAL OF ATTORNEYS FEES</u>



Respectfully submitted,


*ATTORNEYS FOR PLAINTIFFS*

FEERICK LYNCH MacCARTNEY, PLLC     VALLI KANE & VAGNINI LLP
Office and Post Office Address                 600 Old Country Road
96 South Broadway                             Suite 519
Post Office Box 612                       Garden City, New York 110530
South Nyack, New York 10960
Telephone:  (845) 353-2000                Telephone: (516) 203-7180
Facsimile:  (845) 353-2789                Facsimile: (516) 706-0248

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................ii

PRELIMINARY STATEMENT ..............................................................................1

POINT I        The Proposed Settlement Should Be Approved Because It Is a Reasonable
               and Fair Compromise Over Contested Issues........................................................1

POINT II       The Proposed Service Awards Should Be Approved Because Such
               Awards Are Reasonable and Fair .........................................................................5

POINT III      The Proposed Attorneys' Fees, Costs and Expenses Should Be Approved
               Because Such Amounts Are Reasonable and Fair................................................6

CONCLUSION.....................................................................................................................16

TABLE OF AUTHORITIES

Page

Cases

*Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany*,
493 F.3d 110 (2d Cir. 2007).................................................................................... 9, 10

*Barrentine v. Arkansas-Best Freight Systems, Inc.*,
450 U.S. 728 (1981)................................................................................................. 13

*Beckman v. Keybank,*
*N.A.*, 293 F.R.D. 467 (S.D.N.Y. April 29, 2013)............................................. 4, 6, 7, 12, 15, 16

*Brunson v. The City of New York*,
Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 U.S. Dist. LEXIS 18434, at *13 (S.D.N.Y. Dec. 21, 2000) ...................................................................................................................... 14

*Clark v. Ecolab, Inc.*,
Not Reported in F.Supp., 2010 WL 1948198 (S.D.N.Y. 2010) ........................................ 1, 4, 7

*Duchene v. Michael Cetta, Inc.,*
No. 06 Civ. 4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009)........................................... 6

*Dupler v. Costco Wholesale Corp..,*
705 F. Supp.2d 231 (2010) ........................................................................................ 8

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................. 8

*Goldberger v. Integrated Res. Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................................ 8, 9, 10, 11, 15

*Heath v. Hard Rock Cafe Intern. (STP), Inc.*,
Not Reported in F.Supp.2d, 2011 WL 5877506 (M.D. Fla. Oct. 28, 2011) ............................. 7

*Hicks v. Morgan Stanley & Co.*
No. 01-10071, 2005 U.S. Dist. LEXIS 24890.......................................................... 15

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................... 9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006)........................................... 9

*In re Boesky*,
   888 F. Supp. 551 (S.D.N.Y. 1995) ..................................................................................... 15

*In re Cont 'l Ill. Sec.Litig.*,
   962 F.2d 566 (7th Cir. 1992) ............................................................................................. 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 57918, at *49 ............................................................................. 10

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................................. 11, 14

*In re Milos Litigation*,
   Not Reported in F.Supp.2d, 2011 WL 6015705 (S.D.N.Y. 2011) ............................................ 7

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................ 8

*In re Polaroid ERISA Litig.*,
   2007 U.S. Dist. LEXIS51983, at *6 (S.D.N.Y. July 19, 2007) ......................................... 9, 10

*In re Ramp Corp. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 213, at *8 (S.D.N.Y. Jan. 4, 2008) ............................................. 9, 10

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) ............................................................................. 9, 10

*Johnson v. Brennan*,
   Not Reported in F.Supp.2d, 2011 WL 4357376 (S.D.N.Y. September 16, 2011 ................... 1, 7

*Karpus v. Borelli (In re Interpublic Sec. Litig.*),
   No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004) ............... 10

*Khait v. Whirlpool Corp.*,
   2010 WL 2025106, at *8 (E.D.N.Y. 2010) ......................................................................... 15

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) .......................................................................................... 1

*Maley v. Del Global Techs. Corp.*,,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................................. 9

*Matheson v. T-Bone Restaurant, LLC*,
   Not Reported in F.Supp.2d, 2011 WL 6268216 **7-8 (S.D.N.Y. Dec. 13, 2011) ............. 1, 5, 7

*Mentor v. Imperial Parking Sys., Inc.,*
    No. 05 Civ. 7993, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) ................................ 5

*Mohney v. Shelly's Prime Steak,*
    2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) ............................................. 8

*Morris v. Affinity Health Plan, Inc.,*
    Not Reported in F.Supp.2d, 2011 WL 6288035 (S.D.N.Y. 2011) ............................................. 7

*Parker v. Jekyll & Hydye Entm. Holdings., L.L.C.,*
    2010 U.S. Dist. LEXIS 12762, at *7-8 (S.D.N.Y. Feb 9, 2009) ............................................. 12

*Reyes v. Altamarea Grp.. LLC,*
    No. 10 Civ. 6451 2011 WL 4599822 (S.D.N.Y. Aug 16 2011).......................................... 1, 12

*Sand v. Greenberg,*
    2010 WL 69359, at *3 (S.D.N.Y. 2010) ................................................................................. 15

*Savoie v. Merchs. Bank,*
    166 F.3d 456 (2d Cir. 1999)............................................................................................ 10, 15

*Sewell v. Bovis Lend Lease LMB, Inc.,*
    09 Civ. 6548, 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. April 2012).................................... 16

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).................................................................................. 8, 9

*Taft v. Ackermans,*
    2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007)................................................ 14

*Varljen v. H.J. Meyers & Co.,*
    2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 6, 2000) ............................................. 11

*Velez v. Majik Cleaning Serv., Inc.,*
    No. 03 Civ 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 2007) .............................. 9, 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d at 121 (2d Cir. 2005)...................................................................................... 8, 9, 10

*Williams v. Aramark Sports, LLC,*
    Not Reported in F.Supp.2d, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) ............................... 7

*Willix v. Healthfirst, Inc.,*
    No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) .............................. 4, 5, 7

## PRELIMINARY STATEMENT

Plaintiff, Khan Kudo, Individually and on Behalf of All Other Persons Similarly Situated, (hereinafter "Plaintiffs"), by their attorneys, Feerick Lynch MacCartney PLLC and Valli Kane & Vagnini, LLP, (hereinafter "Class Counsel"), respectfully submit this Memorandum of Law in support of the following: (1) the parties' Joint Motion for approval of settlement pursuant to the Fair Labor Standards Act ("FLSA"); (2) approval of service awards; and (3) approval of attorneys' fees and reimbursement of expenses.

The Court is respectfully referred to the accompanying Joint Motion, attorney declarations and Exhibits for a full recitation of the facts and procedure herein.

## ARGUMENT

### I. The Proposed Settlement Should Be Approved Because It Is a Reasonable and Fair Compromise Over Contested Issues

It is well settled that "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Clark v. Ecolab, Inc.*, Not Reported in F.Supp., 2010 WL 1948198 *7 (S.D.N.Y. 2010) (citations omitted).

In *Matheson v. T-Bone Restaurant, LLC*, Not Reported in F.Supp.2d, 2011 WL 6268216 **7-8 (S.D.N.Y. Dec. 13, 2011), the Hon. Deborah A. Batts, U.S.D.J. explained the standard for Court approval of FLSA settlements as follows at *6:

> Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982); *Johnson*, 2011 WL 4357376, at*12; *Reyes*, 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Johnson*, 2011 WL 4357376, at *12; *Reyes*, 2011 WL 4599822, at *6.

In this case, the settlement was the result of litigation and arm's-length negotiation. Swartz Decl. ¶¶ 4-20. During the litigation and at the mediation, Plaintiffs and Defendants were represented by counsel. Accordingly, the Amended Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that the settlement is fair and reasonable.

Here, litigation involved several disputed issues including, but not limited to, misclassification of General Managers (GMs) as exempt; application of executive and/or administrative exemptions; status of GMs as similarly situated; and methodology as well as calculation of damages. As to the disputed merits-based issues, Plaintiffs' position has and continues to be that the GMs are misclassified as exempt; that GMs primary duties are to perform the same work as hourly workers; that GMs are subject to daily, constant, and pervasive overarching control by corporate management; and that any purported "managerial" duties are automated by corporate management. It is understood that Defendants' position has and continues to be that the GMs are properly classified as exempt; that the GMs perform primarily managerial duties using their own discretion; and that the GMs fall within the executive and/or administrative exemptions.

As to the disputed issue of similarly situated, Plaintiffs' position has and continues to be that the GMs are similarly situated because there are corporate policies that dictate that corporate management exercises a great degree of pervasive, daily, and overarching control over all facets of the operation of the individual restaurants no matter location, size, sales volume, and so forth. It is understood that Defendants' position has been and continues to be that the GMs are not similarly situated because restaurants differ in location, venue, size, and sales volume, therefore

requiring different numbers and combinations of restaurant personnel and necessitating different tasks and divisions of labor by each GM in the various restaurants.

As to the disputed issue of damages, perhaps the biggest area of contention herein, the parties vigorously contested the method of calculating overtime damages.   In this regard, Plaintiffs argued that the time-and-one-half method applied while Defendants argued that the half-time method controlled.   Further, Plaintiffs' position has been and continues to be that liquated damages and a three year statute of limitations are appropriate as ample evidence exists about the willfulness of the misclassification.   It is understood that Defendants' position was that there can be no finding of willfulness to support liquidated damages or extended statute of limitations based upon multiple findings of the United States Department of Labor over many years and across many states that Defendants' GMs were properly classified as exempt.

Some of the foregoing issues were touched upon in the parties' respective submissions to the Court in both the motion for conditional certification, and the Defendants' request to Amend the Answer.   Following conditional certification, the parties continued to develop evidence on both sides of the issues via extensive document discovery and continued investigation until fully briefing their respective positions in extensive confidential mediation submissions.

Given the contested dispute on these issues, if the settlement is not approved, the risk of continued litigation to both sides is high.   Significant costs and expenses would be incurred by continued depositions of multiple party and non-party witnesses (Defendants' former corporate level employees) at various locations across the country.   It is anticipated that both parties would eventually move for summary judgment on liability issues and that Defendants would move for decertification.    A trial would eventually be held and thereafter, appeals pursued.   Assuming

3

success on all fronts, any eventual benefit and payment to the Plaintiffs is not guaranteed and would be years away.  This proposed settlement serves the Plaintiffs by eliminating the risk and years of waiting for an uncertain resolution.

The benefits presented by the settlement are high.  Each Plaintiff's damages will be individually calculated by the Claims Administrator based on a pro-rated formula contingent on the number of weeks worked.  All are guaranteed payment as long as a completed claim form package is submitted in a timely manner to the claims administrator, even those few who Defendants argue had their statute of limitations run before opting in are protected.  Those monies not claimed will be split with 50% reverting back to those Opt-ins who filed timely claim form packages and 50% reverting to Defendants' Panda Charitable Foundation, a charitable program that provides food, funding and volunteer services to children's organizations and disaster relief.  Collectively, the $2,975,000 settlement for 155 Plaintiffs represents a significantly higher result per Plaintiff than in other misclassification cases with court-approved settlements.  *See, e.g.*, *Beckman v. Keybank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. April 29, 2013) (In misclassification case, Court approved settlement of $4.9 million for 1,735 members representing average gross payment of $2,824, or $1,863 less approved 33% attorneys' fees, average payment to each); *Willix v. Healthfirst, Inc.*, Not Reported in F.Supp.2d, 2011 WL 754862 (E.D.N.Y. 2011) (In misclassification case, Court approved settlement of $7.675 million for 2,025 members representing average gross payment of $3,790, or $2,501 less approved 33% attorneys' fees, average payment to each); *Clark v. Ecolab, Inc.*, Not Reported in F.Supp., 2010 WL 1948198 (S.D.N.Y. 2010) (In misclassification case, Court approved settlement of $6

4

million for 519 members representing average gross payment of $11,560, or $7,653 less approved 33% attorneys' fees, average payment to each).

As in *Matheson, supra*, the settlement here was the product of litigation, arm's-length negotiation, and assistance of an experienced class and collective mediator.  Both parties were vigorously represented by experienced counsel during all phases during which the aforementioned issues were explored, vetted, and argued.  Upon reaching accord on primary terms at the mediation, the details of the proposed settlement agreement were thereafter negotiated over a period of months following the mediation thereby resolving a clear and actual dispute.   Under the circumstances, particularly given the risks and costs attendant to continuing this contested litigation, the proposed settlement is fair and reasonable and should be approved in all respects.

II. The Proposed Service Awards Should Be Approved Because Such Awards Are Reasonable and Fair

Here, Plaintiffs request service awards of $10,000 for Plaintiff Kudo and $5,000 for pre-certification opt-in Plaintiffs Norman Feng, Jeffrey Countryman, Cristina Lelesch, and Kiettisak Nachampassack.

"Courts routinely approve similar service awards in wage and hour class and collective actions." *Matheson, supra*, 2011 WL 6268216 at *9  (citing *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards in wage and hour action of $30,000, $15,000, and $7,500 to be reasonable); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 Civ. 7993, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (granting $40,000 and $15,000 service awards in wage and hour action, where named plaintiffs were

actively involved in prosecuting the case over its five-year pendency); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) (approving service payments of $25,000 and $10,000 in wage and hour action)).   Indeed, "[i]t is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman*, 293 F.R.D. at 483 (approving service awards of $7,500 and $5,000).

As further detailed in the accompanying Marzolla Attorney Affirmation (*See* Exhibit 3 annexed to the Joint Motion), Plaintiff Kudo assisted in the extensive pre-litigation investigation and all those we seek service awards for contributed significant time away from work and family commitments to assist in the litigation by way of additional investigation, preparation of discovery responses, and travel to and appearances at depositions in New Jersey at the office of former defense counsel.   More importantly, their names will forever be associated with and publicly available on the Court Docket upon search and/or background check by prospective employers in the future; this is a risk each took to bring attention to and right the wrongs alleged herein.

Based upon the foregoing, it is respectfully requested that the service fees be approved in their entirety.

III.  The Proposed Attorneys' Fees, Costs and Expenses Should Be Approved Because Such Amounts Are Reasonable and Fair

"Reasonableness is the touchstone when determining whether to award attorneys' fees." *Beckman*, 293 F.R.D. at 478. Here, Class Counsel seek no more than 33.33% of the total settlement payment of $2,975,000, or $991,567, for reimbursement of their fees together with reimbursement of reasonable and necessary litigation costs and expenses.   Based upon the

following, the attorneys' fees, costs and expenses are reasonable and fair and should be awarded given the significant risk and successful result achieved for each of the Plaintiffs.

In the context of FLSA settlements, the percentage method is the preferred method for awarding attorneys' fees and the percentage requested herein is consistent with fees awarded in many other settlements of FLSA litigation. *See, Beckman, supra* (In FLSA case, Court approved Class Counsel's request for attorneys fees of 33% of the common fund of $4.9 million as reasonable and as "consistent with the norms of class litigation in this circuit")(quotations omitted); *Willix*, 2011 WL 754862 at *6-7; *Morris v. Affinity Health Plan, Inc.*, Not Reported in F.Supp.2d, 2011 WL 6288035 (S.D.N.Y. 2011) (33 1/3% of $2.5 million fund preliminarily approved without discussion of method); *Matheson v. T-Bone Restaurant, LLC*, Not Reported in F.Supp.2d, 2011 WL 6268216 **7-8 (S.D.N.Y. Dec. 13, 2011) (Awarded 33 1/3% of fund, stating that "Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *Johnson v. Brennan*, Not Reported in F.Supp.2d, 2011 WL 4357376 (S.D.N.Y. September 16, 2011) (33 1/3 % of recovery, stating "In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *In re Milos Litigation*, Not Reported in F.Supp.2d, 2011 WL 6015705 (S.D.N.Y. 2011) (33 1/3%); *Clark v. Ecolab, Inc.*, 2010 WL 1948198 (S.D.N.Y. 2010) (awarding 33% of $6 million settlement in FLSA case); *Williams v. Aramark Sports, LLC*, Not Reported in F.Supp.2d, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) (33 1/3%, stating that percentage of recovery is favored method in "common fund" cases); *Heath v. Hard Rock Cafe Intern. (STP), Inc.*, Not Reported in F.Supp.2d, 2011 WL 5877506 (M.D. Fla. Oct. 28, 2011) (33 1/3 % of recovery).

In class action lawsuits for the recovery of wages such as this one, "public policy favors [a common fund] award" of attorneys' fees. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys must be adequately compensated for their efforts.  If not, such abuses would go without remedy because attorneys would be unwilling to take on the risk.  *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method – in common fund cases like this one, courts in this Circuit prefer to award fees as a percentage of the fund.  *Dupler*, 705 F. Supp. 2d at 242 (*quoting Wal-Mart Stores*, 396 F.3d at 121 ("'The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for efficient prosecution and early resolution of litigation'")); *Mohney v. Shelly's Prime Stea*k, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) (the "'percentage-of-recovery' method . . . is . . . the trend in the Second Circuit"); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (collecting cases).  Indeed, in 2006, a district court in the Second Circuit noted that "[a]lthough the Second Circuit has vested the lower circuits with the option of using either the percentage or lodestar method, every significant Southern District opinion facing the issue since *Goldberger* has embraced the percentage approach, without much case-

specific analysis of the choice." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006) (citations omitted); *Maley,* 186 F. Supp. at 370 ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").

There are many reasons why courts prefer the percentage method. First, it "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121; *see also Goldberger*, 209 F.3d at 47-50; *In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213, at *8 (S.D.N.Y. Jan. 4, 2008); *In re Polaroid ERISA Litig.*, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); *Velez*, 2007 U.S. Dist. LEXIS 46223, at *24.

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Inre Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F. Supp. 2d at 262 (percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order") (citing *In re Cont 'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992)). The percentage method is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007), in which the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying

9

client" would pay.  While *Arbor Hill* is not binding here because it does not address a class action common fund attorneys' fee request, the decision supports using the percentage of the fund method here because, as discussed above, the method "mimics the compensation system actually used by individual clients to pay their attorneys."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 397.

Second, the percentage method promotes early resolution.  It "provides a powerful incentive for the efficient prosecution and early resolution of the litigation."  *Wal-Mart Stores*, 396 F.3d at 121 ("[t]he lodestar method 'creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line item fee audits.'"); *In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213, at *8; *In re Polaroid ERISA Litig.*, 2007 U.S. Dist. LEXIS 51983, at *6; *Velez*, 2007 U.S. Dist. LEXIS 46223, at *24.  The percentage method decreases the incentive for plaintiffs' lawyers to run up billable hours, which is considered to be one of the most significant downsides to the lodestar method.  *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at *32 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id.* at *32 (*quoting Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)).  As noted in *Goldberger*, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." 209 F.3d at 48-49; *see also, e.g., In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213, at *8 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007

10

U.S. Dist. LEXIS 57918, at *49. While the lodestar method is still used as a cross-check, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 6, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

Though *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000), did not involve an FLSA claim, the Second Circuit set forth the following six factors to determine the reasonableness of a fee application in that securities class action: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  Should the Court consider these factors, all support the award requested herein.

As to the first factor, the time and labor expended by counsel, Class Counsel spent significant time and effort to achieve the result herein as detailed in the accompanying Attorney Declarations and Exhibits. See Accompanying Attorney Declarations of Sara Wyn Kane (Exhibit 2 annexed to the Joint Motion) and Mary E. Brady Marzolla (Exhibit 3 annexed to the Joint Motion) in Support of Joint Motion for Approval of Settlement, and Plaintiffs' applications for of Approval of Service Awards and Fee Application.  Class Counsel has collectively spent approximately 5,267.09 attorney, paralegal and support staff hours investigating and prosecuting this case from late 2008 to date.  These hours have an aggregate lodestar of $1,511,575.40.  Such hours are reasonable in the instant case, particularly given the magnitude of and management

11

required of the voluminous e-discovery (ESI) necessary to establish Plaintiffs' claims.  All hours are based on contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Class Counsel communicated regularly to ensure there was not unnecessary time incurred nor duplication of effort.  Class Counsel's efforts have been without compensation to date and entitlement to payment contingent upon achieving a successful result.  Further, Class Counsel's efforts are not yet complete.   Additional time will be required to administer the settlement in the future.  *Reyes v. Altamarea Grp., LLC.*, Not Reported in F.Supp.2d, 2011 WL 4599822, *8 (S.D.N.Y. 2011) (In approving 33% attorney fee award in FLSA case, Court noted that "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request."); *Beckman*, 293 F.R.D. at 482 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Parker   v. Jekyll   & Hyde Entm. Holdings., L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *7-8 (S.D.N.Y. Feb 9, 2009) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").

As to the magnitude and complexities of the litigation, the United States Supreme Court has long recognized that "FLSA claims typically involve complex mixed questions of fact and law[.]  These statutory questions must be resolved in light of volumes of legislative history and

12

over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 743 (1981).  On top of an already complex scenario, the substantial ESI issues, review, and management in this case required significant effort to cull and present to the Court in a usable fashion what was described in this Court's decision granting conditional certification at page 13 as "[a] trove of other internal corporate documents [that] support Plaintiffs' claim that GM training and responsibilities were uniform and highly controlled."  That "trove" had to be located among 150,000 unindexed, non-searchable pages produced by former defense counsel.  After certification, approximately 300,000 additional pages were produced relative to the 35 opt-ins selected for deposition and discovery by the Defendants.  While initially produced also in an unindexed, non-searchable fashion, this was later corrected by existing defense counsel during the summer of 2013.  Plaintiffs' Counsel reviewed this entire production.  But for the discovery involving these documents, the successful result would never have been able to be achieved.

As to the risk of litigation, this issue is discussed more fully in Point I, *supra*.  Notwithstanding this risk, Class Counsel undertook to prosecute this action without any guarantee of payment and litigated on a contingent basis.  Class Counsel was required to make a significant investment of time and resources without a guarantee of any kind.  The success of such misclassification cases comes down to the facts and operations of a particular entity, many of which cannot be known or fully understood absent discovery.  Although Plaintiffs respectfully disagree with Defendants' positions on the issues as set forth in Point I, *supra*, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages.  If the case went to trial, Plaintiffs would also have to prove that they were

13

misclassified as exempt from overtime, involving a fact-intensive inquiry into the duties that these employees performed.  Such claims can and would be disputed by Defendant's witnesses, giving rise to credibility issues and significant risk at trial. *See, e.g.*, *Brunson v. The City of New York*, Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 U.S. Dist. LEXIS 18434, at *13 (S.D.N.Y. Dec. 21, 2000) (where class counsel "faced significant obstacles in the lack of reliable means of verifying hours worked and tasks performed by individual plaintiffs," class counsel was entitled to a 50% premium for their achievement of a settlement). Accordingly, the risk of litigation and collection weigh heavily in favor of Class Counsel's request for attorneys' fees. As such, the risk of litigation is real, albeit contested.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).  A full recitation of the background of the lawyers involved is set forth in the accompanying Attorney Declarations (*See* Exhibits 2 and 3 annexed to the Joint Motion).  More particularly, this case was staffed with lawyers with more than 15 years experience in employment law and litigation issues.  As further detailed in Point I, *supra*, the recovery per Plaintiff is substantial.  The proposed settlement guarantees a significant payment available without delay or risk of trial and appeal.

As to the fee in relation to settlement, the cases cited in para. 2 of this Point confirm the reasonableness of the requested fee herein as it is consistent with other FLSA cases in this District.  There is no windfall to Class Counsel and to the contrary, as demonstrated by the Lodestar Cross Check, confirms that Class Counsel is earning far less than their Lodestar and

ensuring a larger recovery for each of the workers herein by application of the percentage method.

Moreover, public policy supports approval of the requested fee where "[t]he remedial purposes of these statutes [FLSA and NYLL] require adequate compensation for attorneys who protect those rights." *Beckman*, 293 F.R.D. at 481 (*citing*, Khait v. Whirlpool Corp., 2010 WL 2025106, at *8 (E.D.N.Y. 2010); *Sand v. Greenberg*, 2010 WL 69359, at *3 (S.D.N.Y. 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Following the *Goldberger* decision, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *27. Courts can then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

Courts in the Second Circuit award lodestar multipliers that range anywhere from 2 to 6. Here, Class Counsel seek a negative lodestar multiplier of about 0.35 (fee request of $973,068.56 divided by lodestar of $1,511,575.44. Respectfully, Class Counsel submit that obtaining well less than their lodestar is certainly not unreasonable, and reflects and compensates them for the risks of the case given the contingent nature of the expected

15

compensation for services rendered, the consequent risk of non-payment at the time of filing the suit, the quality of representation, and the results achieved by the Settlement.  Such a request, Class Counsel submits, is exceedingly reasonable.

Further, and as noted, after Class Counsel spends additional time on this litigation in connection with implementing and monitoring the settlement, their lodestar will increase. *Sewell* 2012 U.S. Dist. LEXIS 53556, at *3; *Beckman*, 293 F.R.D. at 482. Among other things, Class Counsel will answer class member questions, respond to inquiries from the claims administrator, and negotiate and possibly litigate disagreements with Defendants about the administration of the settlement and distribution of the fund. This additional work makes Class Counsel's request "even more reasonable than it appears at first glance." *Beckman*, 293 F.R.D. at 482.

Finally, the request is uncontested by Defendants who do not dispute that such fees and costs to be recovered by Plaintiffs' counsel are reasonable based on the time expended by Plaintiffs' counsel in this case and the fees incurred by Defendants in this case.

Therefore, it is respectfully requested that the proposed attorneys' fees, costs and expenses be approved in their entirety.

## CONCLUSION

Based upon the foregoing, and the accompanying Joint Motion, Attorney Declarations and Exhibits, it is respectfully submitted that the following relief be granted in its entirety: (1) approval of the  parties' Joint Motion for approval of settlement pursuant to the Fair Labor

16

Standards Act, ("FLSA"); (2) approval of service awards; and, (3) approval of attorneys' fees and reimbursement of expenses.

Dated this 2nd day of April, 2015.

Respectfully submitted,

*Attorneys for Plaintiffs*

VALLI, KANE & VAGNINI LLP          FEERICK LYNCH MACCARTNEY, PLLC
600 Old Country Road, Suite 519    96 South Broadway
Garden City, NY 11530              South Nyack, NY 10960
Telephone: (516) 203-7180          Telephone: (845) 353-2000
Facsimile: (516) 706-0248          Facsimile: (845) 353-2789


By:   s/ Sara Wyn Kane            By:   s/ Mary E. Marzolla
      SARA WYN KANE                     MARY E. MARZOLLA
      skane@vkvlawyers.com              mmarzolla@flmpllc.com